STATE BOARD OF TAX APPEALS.

BOROUGH OF WANAQUE, PETITIONER, v. NORTH JERSEY DISTRICT WATER SUPPLY COMMISSION, RESPONDENT.

JOHN A. TOOHEY, PETITIONER, v. NORTH JERSEY DISTRICT WATER SUPPLY COMMISSION, RESPONDENT.

Decided June 2, 1942.

For the petitioners, *Rober C. Ricker, John G. Flanigan, Paul J. Duffy* and *Milton Schumack.*

For the respondent, *Oscar R. Wilensky.*

QUINN, President. Petitioners seek an increase in the assessed valuation of the land of the respondent, situated in the petitioner taxing district, and there assessed for taxes for the year 1940 in the sum of $162,900, or at an average valuation of $100 per acre for the property involved. The prayer of the petitions is for an increase of the assessment to the sum of $977,400, or at the rate of $600 per acre. The individual petitioner is a taxpayer of the borough. The respondent is a public agency of New Jersey, organized and existing under the provisions of *R. S.* 54:5-1, *et seq.; N. J. S. A.* 54:5-1, *et seq.* Appeals to the Passaic County Board of Taxation seeking the same relief were dismissed.

A procedural question raised by respondent must be first disposed of. It is contended on its behalf that the county board acquired no jurisdiction in the matter, and that therefore there could be no appeal to this board, for the reason that copies of the petitions of appeal to the county board were not served upon the respondent in advance of filing. The proofs on the issue of service are in sharp conflict. If it were material, we should find that service was made. We are clear, however, that the pertinent statute, *R. S.* 54:3-21; *N. J. S. A.* 54:3-21, requires no such service where a taxing district is not the party respondent. It is enough, we believe, that

respondent had sufficient notice of the hearing before the county board to enable it to appear and be heard. This it did, resulting in as favorable a determination as could have occurred under any circumsatnces of service, *i. e.,* a dismissal of the appeals. We are vested with full jurisdiction in the premises, and proceed to determine these appeals on the merits.

The gravamen of the complaints before us is that the assessed valuation of the property in question does not reflect the fact that this land has been enhanced in value by reason of work done upon it to fit it for use as the impounding base of a successful waterworks, and that the assessment has been erroneously made upon the supposition that this land, in the hands of a public agency using it for the maintenance of a public water supply, is lawfully assessable as though it were not in such use, but ordinary acreage owned by private persons. Respondent contends that under the statute authorizing the assessment of lands owned by public agencies, used for the purpose and the protection of a public water supply, no part of the expense converting the virgin land to fitness for reservoir uses is lawfully attributable to the assessed value of the land, whatever the law may be as to the situation when such property is so used and maintained by a private water supply company. This fundamental issue must be resolved before we can consider the details of the proofs respecting valuation. Respondent relies upon the provisions of *R. S.* 54:4-3.3; *N. J. S. A.* 54:4-3.3, which is to the following effect:

"\* \* \* the lands of counties, municipalities, and other municipal and public agencies of this state used for the purpose and for the protection of a public water supply, shall be subject to taxation by the respective taxing districts where situated, at the true value thereof, without regard to any buildings or other improvements thereon, in the same manner and to the same extent as the lands of private persons, but all other property so used shall be exempt from taxation."

We think the dispositive reference in this section is to the "taxation \* \* \* at the true value thereof \* \* \*." The legislature has unmistakably commanded that the *land* should

be assessed at its *true value,* and that any buildings or improvements thereon should be exempt. "Improvements" obviously here means, as generally (*R. S.* 54:4-26; *N. J. S. A.* 54:4-26), tangible structures of any kind. There is no reasonable basis for respondent's assumption that "improvements," as here used, is also designed to include (and therefore to exclude from consideration in any land assessment), the cost or expense of an amelioration of the land itself, not reflected in a tangible structure. If that were the legislative intent, it could have been easily expressed in apt words, as it was in *R. S.* 54:4-2.1; *N. J. S. A.* 54:4-2.1, where it is provided that certain state-owned lands should be "assessed at the same value at which they were assessed at the time they were acquired by the state." Furthermore, if the true value of land can be increased by labor performed upon it, calculated to promote its adaptability to an ameliorative use, as the decisions hereinafter cited demonstrate, a statute providing that land owned by certain agencies should be assessed without regard to such enhancement of value, would be unconstitutional. While the legislature may provide for exemptions from taxation under proper classifications, it is clear that once property is designated for taxation, it must be taxed in accordance with its true value. Constitution, article IV, section 7, paragraph 12. *Fidelity Trust Co.* v. *Vogt (Supreme Court,* 1901), 66 *N. J. L.* 86; 48 *Atl. Rep.* 580. The constitutional requirements with respect to the assessment of property for taxation are as applicable in the case of publicly owned, as in that of privately held property. *Essex County Park Commission* v. *West Orange (Court of Errors and Appeals,* 1909), 77 *N. J. L.* 575; 73 *Atl. Rep.* 511; *State* v. *Mercer County Board of Taxation (Supreme Court,* 1937), 118 *N. J. L.* 408; 193 *Atl. Rep.* 555. We therefore conclude that the legislative direction in *R. S.* 54:4-3.3; *N. J. S. A.* 54:4-3.3, that *lands* of public agencies used for the purpose and protection of a public water supply should be taxed at their *true value,* must be taken literally, and land actually so held and used must be valued with regard to such use, including any enhancement thereof which would increase its value if held by a private water company. Any work, cost,

or expense flowing into tangible structures, is of course exempt in the hands of the public agency, although taxable if privately held.

We proceed to address ourselves to the proofs made at the hearing. Petitioners' experts were three water project engineers who, after study of figures reflecting the book cost or value of certain expenses attendant upon the construction of the reservoir, arrived at conclusions for the value of the land in the Borough of Wanaque, ranging from $760 to $1,000 per acre.

In order to appraise this testimony, it should be noted that the reservoir as a whole embraces approximately 5,900 acres, of which 1,629 acres are within the Borough of Wanaque, and the remainder in the Borough of Ringwood. Of the entire area, 2,310 acres are under water, the remaining 3,600 acres forming a protective belt, needed to preserve the water from pollution. Although no figures are furnished us as to the proportion of flooded to total area in the Borough of Wanaque alone, it would appear from maps introduced in evidence that that proportion is somewhat higher than in the ratio of the reservoir as an entirety. The proofs, moreover, are to the effect that the land is lower in Wanaque than in Ringwood, creating greater impounding capacity there. The land in the protective belt is hilly and of less value in its virgin state than that in the flooded area, where many dwellings and other structures stood prior to the construction of the reservoir. We refer to these factors of difference in the land in the two municipalities, because the courts have regarded it as essential to value separately for assessment, the land in each of several taxing districts, which together forms a water reservoir. Any value for the entire reservoir, as for rate-making purposes, not broken down to reflect enhancement of land value in the particular taxing district involved, is immaterial. *Borough of Woodcliff Lake* v. *State Board of Tax Appeals* (*Supreme Court*, 1936), 14 *N. J. Mis. R.* 132; 182 *Atl. Rep.* 866; *affirmed* (*Court of Errors and Appeals*, 1936), 117 *N. J. L.* 114; 187 *Atl. Rep.* 35; *Borough of Haworth* v. *State Board of Tax Appeals* (*Supreme Court*, 1941), 127 *N. J. L.* 67; 21 *Atl. Rep.* (*2d*) 309.

Petitioners' witnesses, Williams and Potts, made their appraisal by simply adding together the book figures for every capital outlay made in the execution of the reservoir project, excepting the cost of erection of the dams and headworks, which they concede to be exempt as improvements, and then dividing the total by the proportion of the acreage in Wanaque to the total acreage of the reservoir. A consideration of the type of items included, and of the failure to allow depreciation or value of water rights, convinces us that these experts have gone about their work in precisely the same manner that they would if valuing this project, except the structures, for rate purposes: The first item included is $3,667,498.64, representing original acquisition costs, mostly by condemnation, of lands and structures, and valuable water diversion rights. The structures paid for by respondent were of a value of between $500,000 and $750,000. The water rights cost $419,500. To what extent the condemnation prices awarded exceeded the true value of the land, we do not know, but the testimony before us is to the effect that they were excessive, generally. In any event, such awards, or even sales prices of parcels acquired by voluntary purchase, would not be material upon the question of true value as of October 1st, 1939, having taken place during the boom period of the 1920's, when this land was being assembled. Neither the water rights nor the cost of the buildings for which respondent had to pay when condemning the property, are in our opinion properly attributable to the value of the land. They are purely enterprise costs. The entire item of $3,667,498.64 is therefore of no present materiality.

The next major item relied upon by petitioners is denominated, "work required to make the land fitted for the impounding of water," in the sum of $2,726,303.40. Included therein are the sub-items, $1,181,969.08 for relocation of Erie Railroad road bed and tracks, and $405,797.88 for relocation of highways. The railroad item is almost entirely improper because, if for no other reason, 95-98% of the railroad lay outside the Borough of Wanaque. Most of the relocated highway was likewise situated in Ringwood, not Wanaque. In any event, however, the moneys in question represent substan-

tially the cost of building new embankments and tracks for the railroad, and a new road bed for the highway. The new constructions are to a great extent comparable in nature with the dams, and are to be regarded as improvements, in the sense of structures, exempt from taxation under the act. See *Hackensack Water Co.* v. *Woodcliff Lake, New Jersey Tax Reports,* 1934-1939, *p.* 144. Part of the payment to the Erie Railroad Company represents a capitalization of the added expense of operation of trains over curves and increased grades. This is obviously not attributable to land value. All of the figures stated are original costs, undepreciated. There was no proof as to what the costs would have been on the assessing date.

The next item under the heading of "work required to make the land fitted for the impounding of water," is "clearing and grubbing," aggregating $587,072.74. This consists of the clearing of trees and brush and other direct treatment and transformation of the land itself, necessary to permit its use as a satisfactory bed for the water in the reservoir. Work of this character unquestionably enhances the value of the land for reservoir purposes. As stated by the Supreme Court in *Borough of Emerson* v. *State Board (Supreme Court, 1928),* 6 *N. J. Mis. R.* 326; 141 *Atl. Rep.* 23, 24:

"We are in accord with the view of the state board that, if the work done by the company on the land for the purpose which the land was to be used tended to enhance its value, this circumstance should have been considered in fixing its value \* \* \*."

It was held in the case cited that the cost referred to could not be there used as the basis for an assessment upon improvements, the land assessment not being in question. In the present case it is undisputed that the Wanaque reservoir is a prosperous and economically justified project, serving an important public need. Clearing and grubbing the land was an essential operation on the land for the proper development of the reservoir, and must be deemed to enhance the value of the land. We have therefore taken a proper proportion of this item allocated to the land in the Borough of Wanaque, into consideration in our determination of the true value of the

property under appeal, after making due allowance for the differences in labor costs between the 1920's and October 1st, 1939, the assessing date. See, also, *People, ex rel. Lehigh Valley Railway Co.* v. *Burke,* 247 *N. Y.* 227; 160 *N. E. Rep.* 19, 22; *Mayor and Aldermen of Jersey City* v. *New York Bay Railroad Co.* (*C. C. A. 3d,* 1926), 13 *Fed. Rep.* (2d) 982, 984.

The remaining two sub-items relied upon by petitioners are $17,685.44 for removal of cemeteries, and $43,066 for relocation of an oil pipe line situated under the bed of the reservoir. We think the first of these enhanced the value of the land for cemetery purposes, to the extent that it involved operations on the land itself but not as to removal of artificial constructions thereon. The second item did not enhance the value of the land, but was merely an additional necessary enterprise expense, not attributable to land value.

Petitioners sought to add to the accumulation of all of the figures enumerated above an item of engineering and administration, of 21.95% of gross, or $490,712.26. This will of course be disregarded in accordance with the elimination of the items upon which it was computed, and to the extent thereof.

The counter-proof adduced by the taxing district consists almost exclusively of testimony as to the value of virgin lands in the neighborhood of that under appeal, designed to prove what the true value of the *locus in quo* would be, were there no reservoir on the premises. The values thus brought out were approximately $75 per acre. Such testimony, as an end in itself, is irrelevant, since it does not value the land in the condition in which it is actually held and used by its owner. *Stevens Institute* v. *State Board* (*Supreme Court,* 1928), 105 *N. J. L.* 99; 143 *Atl. Rep.* 356; *affirmed, Ibid.* 655; 146 *Atl. Rep.* 919; *Hackensack Water Co.* v. *State Board of Tax Appeals* (*Supreme Court,* 1939), 122 *N. J. L.* 596; 7 *Atl. Rep.* (2d) 628. We do conceive, however, that such evidence is a proper, and even indispensable factor to be considered by the board, in the formulation of an intelligent appraisal of the true value of the land in question, used and improved for use for a going, water reservoir enterprise, as of the

assessing date. This is made particularly necessary by the absence of any sales of property reasonably comparable with that under appeal. It is conceded by all of the experts that this property is unique in its possession of an excellent watershed, uniform rainfall, and proximity to the municipalities served thereby.

If a marketable value could be established, based upon sales of land used for a comparable project, within a reasonable period either prior or subsequent to the assessing date, such evidence would be entitled to greater probative weight than anything herein adduced. In its absence, we must arrive at our conclusions in the light of the entire case, giving the material cost figures hereinabove referred to such weight as is prudent in view of the peculiar fact situation presented. While we appreciate that the property in question has been for many years assessed at $100 per acre, and that the value of the lands has not materially changed in the interim, we are satisfied that the assessment has not heretofore, as it should have, been made with regard to the actual use of the lands by the owner thereof. We find the true value of the lands under appeal to be the sum of $244,350, or $150 per acre.

The assessment will be ordered increased to that extent.